UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| CRISTIAN CABRERA-ASCENCIO,<br><br>Plaintiff,<br><br>vs.<br><br>DARIN YOUNG, WARDEN AT SOUTH DAKOTA STATE PENITENTIARY, INDIVIDUAL AND OFFICIAL CAPACITY; DR. MARY CARPENTER, CONTRACT MEDICAL PROVIDER AT SOUTH DAKOTA STATE PENITENTIARY, INDIVIDUAL AND OFFICIAL CAPACITY; AND PA MICHAEL HANVEY, PHYSICIAN ASSISTANT AT SDSDP/JAMESON, INDIVIDUAL AND OFFICIAL CAPACITY;<br><br>Defendants. | 4:18-CV-04089-RAL<br><br><br>OPINION AND ORDER SCREENING AND DISMISSING CASE |

Plaintiff, Cristian Cabrera-Ascencio (Ascencio), an inmate at the South Dakota State Penitentiary in Sioux Falls, filed a pro se civil rights lawsuit under 42 U.S.C. § 1983. Ascencio alleges that defendants were deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment's prohibition on cruel and unusual punishment, and that defendants retaliated against him for exercising his constitutional right of access to the courts. This is Ascencio's second pro se civil rights lawsuit filed under 42 U.S.C. § 1983 in this district. *Cabrera-Asencio v. Young*, 2017 WL 1967359 (D.S.D. 2017). In accordance with the screening procedure required by 28 U.S.C. § 1915A, the Court dismisses Ascencio's complaint.

I.  **Standard of Review**

Pursuant to 28 U.S.C. §§1915(e)(2) and 1915A, a district court shall dismiss a prisoner's civil action against a governmental entity or employee where the complaint supporting such action "is frivolous, malicious, or fails to state a claim upon which relief may be granted" or "seeks monetary relief from a defendant who is immune from such relief." Pro se complaints must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Native Am. Council of Tribes v. Solem*, 691 F.2d 382 (8th Cir. 1982). Notwithstanding its liberal construction, a pro se complaint may be dismissed as frivolous "where it lacks an arguable basis either in law or in fact"; that is, where the claim is "based on an indisputably meritless legal theory" or where, having "pierce[d] the veil of the complaint's factual allegations," the court determines those facts are "fantastic or delusional." *Neitzke v. Williams*, 490 U.S. 319, 325, 327-28 (1989) (internal citations omitted); *see also Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

A court may dismiss a complaint for failure to state a claim where "as a matter of law it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Neitzke*, 490 U.S. at 327 (1989) (internal citations omitted). To survive such dismissal, a complaint "must show that the plaintiff 'is entitled to relief,' . . . by alleging 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir. 2017) (*quoting In re Pre-Filled Propane Tank Antitrust Litig.*, 860 F.3d 1059, 1063 (8th Cir. 2017) (*en banc*), Fed. R. Civ. P. 8(a)(2), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To determine whether a claim is plausible on its face is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. at 679 (2009). A complaint must allege "more than labels and conclusions." *Torti*, 868 F.3d at 671 (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

## II. Plaintiff's Claim of Deliberate Indifference to his Serious Medical Needs

Plaintiff states that, although he has received "physical therapy, shots, knee sleeve, and medication" for pain in his knee from the South Dakota State Penitentiary's Health Services since "October or November of 2017" that, because the Health Services has denied his repeat requests for an MRI, "Health Services is furthering the injury by delaying/prolonging the proper treatment for my injury, keeping me in pain and suffering as it effects my sleep and everyday activities." Doc.1 at 4. Plaintiff further states that "warden staff . . . refuse to step in . . . or order Health Services to diagnose by way of an MRI." *Id.* at 5. Plaintiff states that, as a result, "[t]his knee injury is constantly getting worse." *Id.* Further, Plaintiff states that prison staff are "falsely report[ing]" his "exercise in the yard" to the Health Services staff. Doc. 4 at 7.

The Eighth Amendment's prohibition on cruel and unusual punishment prohibits deliberate indifference to prisoners' serious medical needs. *See, e.g., Estelle v. Gamble*, 429 U.S. 97 (1976). Such deliberate indifference may be manifest "by the prison staff intentionally denying or delaying access to medical care or intentionally interfering with treatment once prescribed." *Dale v. Slyhuis*, 313 Fed.Appx. 917, 918 (8th Cir. 2009). A "serious medical need" is one that is "either obvious to the layperson or supported by medical evidence, like a physician's diagnosis." *Aswegan v. Henry*, 49 F.3d 461, 464 (8th Cir.1995) (internal citations omitted). A complaint that "a physician has been negligent in diagnosing or treating a medical condition," however, "does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle*, 429 U.S. at 106; *see also McRaven v. Sanders*, 577 F.3d 974, 982 (8th Cir. 2009) ("Negligent misdiagnosis does not create a cognizable claim under § 1983."). Likewise, "a mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (*citing Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir.1995)). In sum, "[p]risoners

3

do not have a constitutional right to any particular type of treatment" as "nothing in the Eighth Amendment prevents prison doctors from exercising their independent medical judgment." *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996).

Here, Plaintiff's allegations do not demonstrate deliberate indifference to a serious medical need. Rather, Plaintiff's medical history, as submitted by him, indicates that he was seen by Health Services on 23 separate occasions over a 14-month period. Plaintiff's June 20, 2018 medical report reveals that, although the Plaintiff had been "adamant that he receive an MRI," that "[Health Services staff] have not found definite physical exam findings or history [of] complaints to suggest need for MRI" and that Plaintiff "states he just wants an MRI to know exactly what is wrong with his knee." Doc. 4-9 at 1. The same document indicates that Plaintiff "[h]ad x-rays of the left knee October 11, 2017 which were negative." *Id.* According to this medical report, Plaintiff states that he engages in "cardio which includes up to 200 Burpee's [*sic*] and running 1-2 miles" in addition to "squats and lunges." *Id.* The visit dictation indicated that the care provider "stress[ed] importance of activity restriction" which Plaintiff "initially . . . refused to accept." *Id.* at 3. Plaintiff's most recent medical report indicates that defendant Michael Hanvey requested "unit staff to monitor if patient is following his activity restrictions." *Id.* at 1. Plaintiff's prior medical records reflect a consistent pattern of Health Services staff attempting to diagnose and treat Plaintiff's chronic knee pain with steroid shots, physical therapy, and oral medication.

Plaintiff's medical records also note that he "was referred to have an MRI of his left knee to further identify the patient problems however this was denied by the utilization review committee." Doc. 4-9 at 1. Plaintiff's PA, Michael Hanvey, requested the MRI on May 22, 2018. Plaintiff characterizes this outcome as the result of "much argument with [PA] Hanvey." Doc. 4 at 6. However, prior to ordering the MRI, Michael Hanvey had assessed that Plaintiff "may need

4

MRI if continued problems at follow-up" but that this was "not supported on clinical exam today." Doc. 4-9 at 17. After ordering the MRI, Michael Hanvey again stated that "[Health Services staff] have not found definite physical exam findings or history [of] complaints to suggest need for MRI." Doc. 4-9 at 1.

Besides his assertions of needing an MRI, Plaintiff has provided no evidence that he was ever denied or delayed access to medical care, or that prison staff interfered with his treatment. Plaintiff alleges that prison staff falsely reported that he engages in physical activities in violation of his treatment regime; in support of this statement, he states that on October 31, 2017, he "was accused of being in the rec yard without my crutches" but that he "was only doing upper body workouts." Doc. 4 at 3. Plaintiff also generally states that prison staff have "report[ed] to Health Services staff what I am doinglike [*sic*] workouts or running, in which I have not." It is unclear whether this statement refers to the October 31, 2017 incident or to further incidents. However, the medical records Plaintiff has provided indicate that he himself admits to engaging in physical activity that is likely to exacerbate his knee pain.

Whether to order an MRI is a medical decision. As stated above, a disagreement as to treatment decisions does not rise to a constitutional violation. Plaintiff is not entitled "to receive a particular treatment at his own behest." *Jensen v. Pennington County Police Dept.*, 2009 WL 1475037, *2 (D.S.D. 2009). Michael Hanvey's final determination that Plaintiff's request for an MRI is unwarranted does not constitute deliberate indifference to a serious medical need.

### III. Plaintiff's Claim of Retaliation for Exercising Right of Access to the Courts

Plaintiff states that, since filing his prior claim, "I have had my cell shook down numerous times for no reason at all" and that the staff have stolen paperwork concerning "my grievances on this medical problem" and his "first set of § 1983 forms that [he] had filled out" in "an attempt to

keep me from filing against them." Doc. 1 at 6. Plaintiff also indicates that staff had "plac[ed] [him] in the hole." *Id.* Plaintiff further states that prison staff have taken his property and have not returned it. Doc. 4 at 7. Plaintiff indicates that this conduct constitutes retaliation and a violation of his right to access the courts. Doc. 1 at 6.

Prisoners have a constitutional right of access to the courts. *See, e.g., Lewis v. Casey*, 518 U.S. 343, 346 (1996). This right requires "prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 828 (1977), *partly limited on other grounds by Lewis*, 518 U.S. at 354. A prisoner must establish that he or she has suffered actual injury in order to establish a violation of the right of access to the courts. *Lewis*, 518 U.S. at 349. Actual injury is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Lewis*, 518 U.S. at 348 (internal citations omitted); *see also Hartsfield v. Nichols*, 511 F.3d 826, 832 (8th Cir. 2008). That is, to demonstrate a viable access to courts claim plaintiff must show that his "non-frivolous legal claim was frustrated or impeded." *Winston v. Burl*, 596 Fed.Appx. 525, 525 (8th Cir. 2015) (*citing Hartsfield*, 511 F.3d at 832). Here, Plaintiff has failed to plead sufficient facts to support a violation of his right of access to the courts. Plaintiff has not been impeded in his ability to file the current lawsuit, which includes medical records and grievance forms. He has therefore failed to articulate an actual injury sufficient to establish the standing required for this claim.

Filing of prison grievances and lawsuits are protected First Amendment activities. *Lewis v. Jacks*, 486 F.3d 1025, 1029 (8th Cir. 2007). A *prima facie* case of retaliation in violation of the First Amendment requires that the plaintiff demonstrate that "(1) he engaged in a protected activity; (2) that the government official took adverse action against him that would chill a person

6

of ordinary firmness from continuing in the activity; and (3) that the adverse action was motivated at least in part by the exercise of the protected activity." *Santiago v. Blair*, 707 F.3d 984, 991 (8th Cir. 2013). The third element of the *prima facie* case requires the plaintiff to show that "but for the retaliatory motive" the prison official would not have engaged in the disciplinary action. *Haynes v. Stephenson*, 588 F.3d 1152, 1156 (8th Cir. 2009) (internal citations omitted). To this end, retaliation claims must "allege sufficient facts upon which a retaliatory animus could be inferred" and may not be "speculative" or "conclusory." *Atkinson v. Bohn*, 91 F.3d 1127, 1129 (8th Cir. 1996). Courts have further held that retaliation claims fail where a prisoner does not "present evidence showing the particular defendant who is alleged to have taken the retaliatory action was aware of, or was affected by, the prisoner's earlier constitutionally protected activity from which retaliatory animus could be inferred." *Gard v. Dooley*, 2016 WL 5376236, *32 (D.S.D. 2016) (*citing Hale v. Williams*, 390 Fed. Appx. 351, 352 (5th Cir. 2010)). Ultimately, federal courts must not attempt to "micro-manage state prisons" *Hosna v. Groose*, 80 F.3d 298, 303 (8th Cir. 1996); this is particularly true for claims of retaliation, as such claims are "prone to abuse since prisoners can claim retaliation for every decision they dislike." *Gard* at 31 (*citing Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)).

Here, Plaintiff has failed to allege sufficient facts to satisfy a retaliatory discipline claim. Plaintiff rather has made conclusory claims of retaliation insufficient to infer a retaliatory animus on the part of the prison officials engaged in the disciplinary actions. He has not stated which officials shook down his cell or took his property or whether they were aware of his pending lawsuit or grievances, nor has he alleged the time period such activities were engaged so as to suggest that these activities were in retaliation for filing a grievance or seeking medical care. Plaintiff has therefore not satisfied the third prong of a *prima facie* case under the First

Amendment, that, but for a retaliatory motive, prison officials would not have engaged in the activity he alleges.

## IV. Conclusion

As a result of the foregoing, Plaintiff's complaint should be dismissed pursuant to 28 U.S.C. § 1915A for failure to state a claim upon which relief may be granted. Accordingly, it is hereby

ORDERED that Plaintiff's Complaint, Doc. 1, does not survive screening and will be dismissed and as a result Plaintiff's Motion to Appoint Counsel, Doc. 7, is denied.

DATED this 26th day of October, 2018.

BY THE COURT:

_____
ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE